AO 241
(Rev. 12/04)

RECEIVED

2:07-CV-947-MEF

Page 1

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF**
**HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

| United States District Court | District: Circuit Court Middle |
|---|---|

JEBRA P. HACKETT. C
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| Name (under which you were convicted): Earnest Lee Walker Jr. | Docket or Case No.: GJ07-168 |
|---|---|
| Place of Confinement : Montgomery County Jail | Prisoner No.: 80027 |
| Petitioner (include the name under which you were convicted) Earnest Lee Walker Jr. | v. Respondent (authorized person having custody of petitioner) State of Alabama |

The Attorney General of the State of

**PETITION**

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    Montgomery County Circuit Court

    (b) Criminal docket or case number (if you know): GJ07-168

2.  (a) Date of the judgment of conviction (if you know): October 1, 2007

    (b) Date of sentencing: October 25, 2007

3.  Length of sentence:

4.  In this case, were you convicted on more than one count or of more than one crime?  ☑ Yes   ☐ No

5.  Identify all crimes of which you were convicted and sentenced in this case:

    Kidnapping 1st x 2 Counts

6.  (a) What was your plea? (Check one)

    ☑ (1)  Not guilty        ☐ (3)  Nolo contendere (no contest)

    ☐ (2)  Guilty            ☐ (4)  Insanity plea

AO 241
(Rev. 12/04)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to? N/A

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.    Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court: CiRcuit CouRT

(b) Docket or case number (if you know): GJ07-168

(c) Result: HAVE NOT HEARD AnyThing

(d) Date of result (if you know):

(e) Citation to the case (if you know):

(f) Grounds raised: INEFFECTIVE counSEL, THE Right To A FAIR TRIAL, THE Right To Due Process, THE Right To A STATUS HEAiNg, PRELIMARY HEARing, PlEA, AND THE Right To Surpeon EVidENCE, WitNESSES RECORDS.

(g) Did you seek further review by a higher state court?    ☐ Yes    ☑ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

(4) Date of result (if you know):

✎AO 241
(Rev. 12/04)

  (5) Citation to the case (if you know):

  (6) Grounds raised:

  (h) Did you file a petition for certiorari in the United States Supreme Court? ☐ Yes ☑ No

   If yes, answer the following:

   (1) Docket or case number (if you know):

   (2) Result:

   (3) Date of result (if you know):

   (4) Citation to the case (if you know):

10. Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

  concerning this judgment of conviction in any state court? ☐ Yes ☑ No

11. If your answer to Question 10 was "Yes," give the following information:

  (a)  (1) Name of court:

   (2) Docket or case number (if you know):

   (3) Date of filing (if you know):

   (4) Nature of the proceeding:

   (5) Grounds raised:

  (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

 ☐  Yes ☑ No

 (7) Result:

 (8) Date of result (if you know):

✎AO 241
(Rev. 12/04)

(b) If you filed any second petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

    (6) Did you receive a hearing where evidence was given on your petition, application, or motion?

    ☐  Yes    ☑ No

    (7) Result:

    (8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

    (1) Name of court:

    (2) Docket or case number (if you know):

    (3) Date of filing (if you know):

    (4) Nature of the proceeding:

    (5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

❏ Yes    ☑ No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ❏ Yes    ☑ No

(2) Second petition:    ❏ Yes    ❏ No

(3) Third petition:    ❏ Yes    ❏ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:** INEFFECTIVE COUNSEL

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): THE DEFENDANT REPORTED ATTORNEY - GARY L. STEPHENS TO THE ALABAMA STATE BAR, AROUND ARE ABOUT SEPT. 24, 2007 AND ON SEPT. 29 2007 THE DEFENDANT ASKED HIS ATTORNEY TO STEP DOWN. THE ABOVE ATTORNEY HAD NO INTENT TO HELP DEFENDANT IN HIS CASES, ATTORNEY - GARY L. STEPHENS SHOULD HAVE REPORT TO THE JUDGE THAT THE DEFENDANT HAD FILED A COMPLAINT O HIM THUR THE STATE BAR. THE ABOVE ATTORNEY WITHHELD EVIDENCE, RECORDS, WITNESSESS, IN DEFENDANT DEFENSE.

(b) If you did not exhaust your state remedies on Ground One, explain why: BECAUSE SINCE I HAVE BEEN HERE I HAVE PUT IN MOTIONS TO THE DISTRICT COURT, CIRCUIT OF MONTGOMERY AND HAVE NOT HEARD ANYTHING BACK, THE UNITE STATE DISTRICT ORDERED THAT HE DEFENDANT COMPLAINT OF CIVIL RIGHTS VIOLATION CAN BE ADDRESS IN STATE COURT. I WAS FOUND GUILTY AND THAT MATTER NEVER CAME UP.

AO 241
(Rev. 12/04)

(c)      **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ☑ Yes      ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes      ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?      ☐ Yes      ☑ No

(4) Did you appeal from the denial of your motion or petition?      ☐ Yes      ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?      ☐ Yes      ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241
(Rev. 12/04)

Page 8

**(e) Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have
used to exhaust your state remedies on Ground One: THE DEFENDANT HAVE PUT IN MANY
MOTIONS TO DISMISS IN THE CIRCUIT AND DISTRICT COURT

**GROUND TWO:** DEFENDANT WAS ORDERED by Judge-REESE
TO CONTINUE WITH TRIAL WITH ATTORNEY, IN VIOLATION OF thi
Rights

**(a)** Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): Judge-REESE
WAS TOLD by DEFENDANT OCTOBER 1, 2007 THAT HE
HAD FIRED HIS ATTORNEY, AND THAT HIS ATTORNEY WAS
NOT IN THE BEST INTEREST OF DEFENDANT AND FOR
Withholding EVIDENCE, INEFFECTIVE COUNSEL

**(b)** If you did not exhaust your state remedies on Ground Two, explain why:

**(c)**     **Direct Appeal of Ground Two:**

        (1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

        (2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

**(d)**     **Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

             ☐   Yes    ☑ No

        (2) If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition:

        Name and location of the court where the motion or petition was filed:

        Docket or case number (if you know):

        Date of the court's decision:

AO 241
(Rev. 12/04)

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?     ☐ Yes   ☑ No

(4) Did you appeal from the denial of your motion or petition?   ☐ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?   ☐ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :

have used to exhaust your state remedies on Ground Two  THE DEFENDANT HAVE APPEAL
THIS MATTER TO THE CIRCUIT COURT

**GROUND THREE:** DUE PROCESS

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):  THE DEFENDANT
WAS NOT ALLOWED TO RECIEVE ALL OF THE EVIDENCE STATE
INTENTED TO USE AGAINST DEFENDANT IN COURT. THIS INF
ORMATION WAS REQUESTED IN THE FORM OF A MOTION OF DISCO...
THE DEFENDANT HAD NO CHANCE IN THIS STATE TO WIN HIS
CASE BECAUSE HE WAS NOT ALLOWED A FAIR TRIAL

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)    **Direct Appeal of Ground Three:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

   (2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

   ☐ Yes    ☑ No

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: MOTION TO DISMISS

   Name and location of the court where the motion or petition was filed: CIRCUIT COURT OF MONTG, ALABAMA

   Docket or case number (if you know):

   Date of the court's decision:

   Result (attach a copy of the court's opinion or order, if available):

   (3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☑ No

   (4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☐ No

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed:

   Docket or case number (if you know):

   Date of the court's decision:

   Result (attach a copy of the court's opinion or order, if available):

✎AO 241
(Rev. 12/04)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three: COURT OF CRIMINAL APPEALS

**GROUND FOUR:** THE DEFENDANT WAS CHARGED WITH (1) COUNT OF KIDNAPPING (1) COUNT AGGRAVATED STALKING, BUT WAS FOUND GILTY OF TWO COUNTS OF KIDNAPPING

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

ON Feb. 5, 2007 THE DEFENDANT WAS CHARGED WITH THE KIDNAPPIN OF NIGEL WALKER AND THE AGGRAVATED STALKING OF BELINDA WALKER, THERE IS ONLY ONE ALABAMA UNIFORM INCIDENT/OFFE REPORT FROM the MONTGOMERY POLICE DEPARTMENT OF KIDNAPPING AND ONE OF AGGRAVATED STALKING, BUT I WAS FOUND GUILTY OF two COUNTS OF KIDNAPPING.

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)     **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes     ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

✎AO 241
(Rev. 12/04)

Name and location of the court where the motion or petition was filed: MONTGOMERY CIRCUIT COURT

Docket or case number (if you know): GJ07-168

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?  ❑ Yes  ☑ No

(4) Did you appeal from the denial of your motion or petition?  ❑ Yes  ❑ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ❑ Yes  ❑ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

✎AO 241
(Rev. 12/04)

13.   Please answer these additional questions about the petition you are filing:

     (a)   Have all grounds for relief that you have raised in this petition been presented to the highest state court

         having jurisdiction?   ☑ Yes   ☐ No

         If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

         presenting them:

     (b)   Is there any ground in this petition that has not been presented in some state or federal court?  If so,

         ground or grounds have not been presented, and state your reasons for not presenting them:

14.   Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

      that you challenge in this petition?   ☐ Yes   ☑ No

      If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues

      raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy

      of any court opinion or order, if available.

15.   Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

      the judgment you are challenging?   ☑ Yes   ☐ No

      If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

      raised. MONTGOMERY CIRCUIT COURT - CASE # GJ07-168

      AND APPEAL

✎AO 241
(Rev. 12/04)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the

judgment you are challenging:

(a) At preliminary hearing:


(b) At arraignment and plea:


(c) At trial: ATTORNEY - GARY L. STEPHENS, 7027 HALCYON PARK D
MONTGOMERY, AL, 36047

(d) At sentencing:


(e) On appeal: EARNEST LEE WALKER JR (PRO-SE)


(f) In any post-conviction proceeding:


(g) On appeal from any ruling against you in a post-conviction proceeding: EARNEST LEE WALKER JR
(PRO-SE)


17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are

challenging?        ☐ Yes    ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:



(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the

future?        ☐ Yes    ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain

the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

✎AO 241
(Rev. 12/04)

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.   § 2244(d) provides in

part that:

    (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

🖎AO 241
(Rev. 12/04)

(2)     The time during which a properly filed application for State post-conviction or other collateral review
with respect to the pertinent judgment or claim is pending shall not be counted toward any period of
limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief: THE DISMISSAL OF THE DEFENDANT
QUILTY CHARGE, OR TO HAVE THESE CHARGES GO BACK BEFORE THE
CIRCUIT COURT,

or any other relief to which petitioner may be entitled. THAT PETITIONER BE GRANTED AND APPEN
BOND.

Earnest Lee Walker Jr. (Pro-Se)
**Signature of Attorney (if any)**

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on    October 18, 2007    (month, date, year).

Executed (signed) on    October 18, 2007    (date).

Earnest Lee Walker Jr.
**Signature of Petitioner**

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

### IN FORMA PAUPERIS DECLARATION

_____

[insert appropriate court]

* * * * *



CARRAFORT McEE WALKER, JR. #80026

M.C.D.T.

P.O. Box 4599

MONTGOMERY, ALABAMA 36103

INMATE MAIL

CLERK, UNITED STATES DISTRICT
COURT

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101

2:07-CV-947-MEF

RECEIVED

Clerk, United District Court,

2007 NOV -6  A 10: 39

DEBRA P. HACKETT, CLK.
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

Comes now the Defendant, Earnest Lee Walker jr. (pro-se) have enclosed a copy of each Witness Statement that was made on feb. 5, 6, 2007, charging the Defendant with (1) count of Kidnapping of Nigel Walker and the aggravated stalking of Belinda Walker. The Defendant believes that this evidence will show the United States District court that the Defendant should have never been found guilty of the charge of Kidnapping in the 1ST Degree. and do believe he was illegally arrested, illegally charged, have been trialed against his will not allowed the 5th and 14th Amendment to Due process, not allowed a fair Trial, ineffective counsel, The Defendant was not allowed a preliminary hearing, Status hearing, or a plea hearing. All of these steps would have ensured that the Defendant had a fair Trial. Attorney-Gary Stephens did nothing to make sure the Defendant had a fair Trial. The plaintiff was allowed to make a statement in Trial that the Defendant had a weapon which was a hammer, This was never mention in her police report or statement. See court transcript from oct. 1, 2007, on oct 25, 2007 on the Defendants Sentence day the state said the Defendant had a knife also see court transcript. Attorney-Gary Stephens allowed the State of Alabama to withhold important evidence from the Defendant (1) The Defendants on statement on feb. 5, 2007 (2) The report of the arresting police officer (3) The report of the two officers that transported the Defendant from Greenville Alabama, to the Montgomery City jail.

(4) The pictures shown the color of the Defendants car. all of this evidence was withheld from the Defendant motion of Discovery. The Defendant State and Civil Rights was violated and are still being violated. Now the Defendant have been moved out of the Montgomery County Dentention Center and moved to Saunders County Jail in Haynesville Alabama, Were there is no Library the Defendant can't request that copies of his legal work be made etc. So as of now please forward all of the Defendants information to the outside address.

respectfully
yours

_Earnest Lee Walker Jr_ (pro-se)
EARNEST LEE WALKER JR
November 2, 2007

P.S.
    The Defendant have requested that Attorney-Gary Stephens return his evidence with no luck. the Defendant requested that the Hon, Judg-Eugene W, Reese order the above attorney to return his evidence, see court transcript from oct. 25, 2007. Also he have repeated it to the Alabama State Bar time and time again. With no respond. The Defendant have enclosed some evidence, The $5.00 money order has been put in the Mail

*[handwritten top margin]* EXHIBIT A

*[handwritten]* I Am charge with one count Each

*[handwritten]* She STATED AT TRIAL THERE WAS A WEAPON A HAMMER (NO)    (NO)

OFFICER'S WORK PRODUCT MAY NOT BE PUBLIC INFORMATION

| INCIDENT/OFFENSE REPORT CONTINUED | 95 DATE AND TIME OF REPORT 0 2 0 5 0 7 08:42 ☐AM ☒PM ☐MIL. | 96 CASE # 0 0 5 4 5 5 | 97 SFX | 98 ☒OFFENDER ☐SUSPECT ☐MISSING PERSON | ☐CHECK IF MULTIPLE |
|---|---|---|---|---|---|

| 99 NAME (LAST, FIRST, MIDDLE) Walker Earnest Lee Jr | 100 NICKNAME/ALIAS | 101 RACE ☐W☒B | 102 SEX ☒M ☐F | 103 DOB 0 7 3 0 7 0 | 104 AGE 36 |
|---|---|---|---|---|---|

| 105 ADDRESS (STREET, CITY, STATE, ZIP) 235 Village Cir Fort Deposit , Al 36032 | 106 HGT 6'1 | 107 WGT 230 | 108 EYE BRN | 109 HAIR BLK | 110 COMPLEXION MED |
|---|---|---|---|---|---|

| 111 PROBABLE DESTINATION N | 112 ARMED ☐Y ☒N ☐UNK. | 113 WEAPON |
|---|---|---|

| 114 CLOTHING Blue Dickey Shirt ,Blue Dickey Pants | ☐SCARS ☐MARKS ☐TATOOS | 115 WEAPON ☒ARRESTED ☐WANTED |
|---|---|---|

| 116 NAME (LAST, FIRST, MIDDLE) O | 117 NICKNAME/ALIAS | 118 RACE ☐W☐B | 119 SEX ☐M ☐F | 120 DOB | 121 AGE |
|---|---|---|---|---|---|

| 122 ADDRESS (STREET, CITY, STATE, ZIP) N | 123 HGT | 124 WGT | 125 EYE | 126 HAIR | 127 COMPLEXION |
|---|---|---|---|---|---|

*[handwritten]* HE did NOT make A REPORT or come to Court he WAS in the CAR.

| 128 PROBABLE DESTINATION N | 129 ARMED ☐Y ☐N ☐UNK. | 130 WEAPON |
|---|---|---|

*[handwritten]* NO MARK For the Other

| 131 CLOTHING E | ☐SCARS ☐MARKS ☐TATOOS | 132 WEAPON ☐ARRESTED ☐WANTED |
|---|---|---|

| | 133 NAME (LAST, FIRST, MIDDLE) | SEX | RACE | DOB | 134 ADDRESS (STREET, CITY, STATE, ZIP) | 135 RES. PHONE | 136 BUS. PHONE |
|---|---|---|---|---|---|---|---|
| #1 | Lee Johnny - Blk Male | ☒M ☐F | ☐W☒B | 0 7 0 8 8 3 | 6115 Hinchcliff Dr Montg, Al 36116 | (334) 280-3024 | ( ) |
| #2 | Mosier, Keith - White male | ☒M ☐F | ☒W☐B | 0 8 1 9 7 2 | 213 Oak Forest Dr. Montg., Al. 36117 | (334) 271-3704 | (334) 799-9194 |
| #3 | Morris, Thomas - White male | ☒M ☐F | ☒W☐B | 0 1 3 1 5 7 | 231 Wiltshire Dr.Montg., Al. 36117 | (334) 215-9896 | (334) 396-0809 |
| #4 | | ☐M ☐F | ☐W☐B | | | ( ) | ( ) |

| WITNESS #1 SSN 4 1 7 1 7 0 6 9 6 | WITNESS #2 SSN | WITNESS #3 SSN | WITNESS #4 SSN |
|---|---|---|---|

*[handwritten]* → NoTice They madesure to mark they are white

137

On today's date and time, the defendant, Earnest Walker Jr did abduct another person, to wit BM Nigel Walker with the intent to aid

the commission of Kidnapping 1st and Aggravated Stalking of BF Belinda Walker who is the mother of Nigel Walker and the ex-

wife of the defendant.

*[handwritten]* THE Kidnapping OF Nigel Walker

*[handwritten]* And quote , Aggravated Stalking OF BF Belinda Walker was the mother of Nigel Walker and the Ex Wife OF the Defendant

| | CONTINUED ON SUPPLEMENT ☐Y ☒N |
|---|---|
| ASSISTING AGENCY ORI | ASSISTING AGENCY CASE # | SFX |

I hereby affirm that I have read this report and that all information given by me is correct to the best of my knowledge. I will assume full responsibility for notifying this agency if any stolen property or missing person hereby reported is returned.

SIGNATURE

| 138 LOCAL USE |
|---|
| 139 STATE USE |

| MULTIPLE CASES CLOSED | 140 CASE # | 141 SFX | 142 CASE # | 143 SFX | 144 CASE # | 145 SFX | 146 ADDITIONAL CASES CLOSED NARRATIVE ☐Y ☐N |
|---|---|---|---|---|---|---|---|

| 147 CASE STATUS ☐PENDING ☐INACTIVE ☒CLOSED | 148 CASE DISPOSITION ☐CLEARED BY ARREST (JUV.) ☒CLEARED BY ARREST (ADULT) ☐UNFOUNDED ☐ADM. CLEARED | ☐EXCEPTIONAL CLEARANCE ☐SUSPECT/OFFENDER DEAD ☐OTHER PROSECUTION ☐EXTRADITION DENIED ☐LACK OF PROSECUTION ☐JUVENILE, NO REFERRAL ☐DEATH OF VICTIM | 149 REPORTING OFFICER CPL E.B.WHITE | ID # 353 |
|---|---|---|---|---|
| ENTERED ACIC/NCIC DATE ☐Y ☐N | | | 150 ASSISTING OFFICER DET S.B.EDWARDS | ID # 033 |
| | | | 151 SUPERVISOR APPROVAL   ID # | 152 WATCH CMDR.   ID # |

*[handwritten bottom]* How is the case CLOSED And I havent been to Cart yet THIS WAS 2/5/07    8:42 AM

Montgomery County Detention Facility
# INMATE REQUEST FORM

DATE: 10-4-07

NAME: EARNEST WALKER          TIME: 2:30 pm

BOOKING # 80027          CELLBLOCK: 3-C

*Please check ONLY ONE of the following:*

_____ LAUNDRY

✓ RECREATION

_____ CHARGES/BOND INFORMATION

_____ MAIL

_____ CANTEEN

_____ ATTORNEY FORM - (Hardship Affidavit)

_____ COURT REQUEST FORM

_____ PROPERTY

_____ VISITATION

_____ FOOD SERVICE

_____ GENERAL LIBRARY

_____ MONEY INFORMATION

_____ OTHER

*Briefly state your request*

on 10-1-07 I went to court and was found guilty on (2) counts of Kidnapping, and they dropped my other charges, could you please give me the case numbers on the Kidnapping cases.

Thanks, Earnest Walker

## DO NOT WRITE BELOW THIS LINE - FOR REPLY ONLY

Date: 10/10/07          one case number but two charges, This IS the case number

I was given ACTION TAKEN 10-11-07          Time: _____

GJ07-168  Kidnapping 1st (2 cts) / aggravate Stalking  $300,000.00

DC07-487  Viol. of Protection Order — No Bond

Action Taken by: _____
                    Signature

MAXED BOND

## PLACE THIS FORM IN INMATE HANDMAIL BOX FOR PICK-UP

*Inmate Request Forms will be routed to the appropriate supervisor or administration for disposition.*
*Request Forms will be completed and placed in inmate's file.*
*Inmates will receive a copy when a written response is required.*

Revised 11/06

## ALABAMA UNIFORM INCIDENT/OFFENSE REPORT

*(handwritten top margin)* IN INJURY (EXHIBIT F) How was this Information given to the officers (42 minutes Later)

*(handwritten right margin, vertical)* She stated there was no injury — In Trial She said Nigel hit her head

| | | |
|---|---|---|
| VICTIM SSN | COMPLAINANT SSN | ☐ INCIDENT ☒ OFFENSE ☐ SUPPLEMENT  2 CASE # 0 0 5 4 5 5  3 SFX |

4 ORI # 0 0 3 0 1 0 0   5 DATE AND TIME OF THIS REPORT 0 2 0 5 0 7  8:42 ☐ AM ☒ PM ☒ MIL   6 AGENCY NAME Montgomery Police Department   7 IF SUPPLEMENT ORIGINAL OFFENSE DATE

8 REPORTED BY ☒ VICTIM OR   9 ADDRESS (STREET, CITY, STATE, ZIP) *Right Address*   10 PHONE ( )

12 VICTIM (LAST, FIRST, MIDDLE NAME) Nigel Walker   1P 2B 3S   13 ADDRESS (STREET, CITY, STATE, ZIP) 4588 Wimbledon Rd Montgomery, Al 36116   14 PHONE ( )

15 EMPLOYER/SCHOOL N/A   16 OCCUPATION N/A   17 ADDRESS (STREET, CITY, STATE, ZIP)   18 PHONE ( )

19 ☐ RESIDENT ☐ NON-RESIDENT   20 INJURY ☐ Y ☒ N   21 RACE ☐ W ☐ B   22 SEX ☒ MALE ☐ FEMALE   23 HGT 2'0   24 WGT 30   25 DOB 0 9 2 8 0 3   26 AGE 3   27 WAS OFFENDER KNOWN TO VICTIM? ☒ Y ☐ N   28 VICTIM WAS (EXPLAIN RELATIONSHIP) Father   29 CODE

30 TYPE INCIDENT OR OFFENSE Kidnapping   31 DEGREE (CIRCLE) ① 2 3   32 UCR CODE   33 STATE CODE/LOCAL ORDINANCE

*(handwritten)* She made a Statement Nigel Hit His Head

34 TYPE INCIDENT OR OFFENSE ☐ FEL. ☐ MISD.   35 DEGREE (CIRCLE) 1 2 3   36 UCR CODE   37 STATE CODE/LOCAL ORDINANCE

38 PLACE OF OCCURRENCE 444 Twain Curve Montgomery, Al 36117

*(handwritten)* The Offense was Said To Happen on Oliver Rd by Witnesses   39 SECTOR 0 5

40 POINT OF ENTRY ☐ DOOR ☐ WINDOW ☐ ROOF ☐ OTHER   41 METHOD OF ENTRY ☐ FORCIBLE ☐ ATT. FORCIBLE ☐ NO FORCE   42 ASSAULT ☐ SIMPLE ☐ AGGR.   43 TREATMENT FOR ☐ Y   ASSAULT INJURY ☒ N   60 CODE

OCCURRED ON OR BETWEEN 0 2 0 5 0 7   45 TIME 07:50 ☐ AM ☐ PM ☒ MIL   46 S M T W ☒ T F S   47 LIGHTING ☒ NATURAL ☐ MOON ☐ ART. EXT ☐ ART. INT ☐ UNK.   48 WEATHER ☒ CLEAR ☐ CLOUDY ☐ RAIN ☐ FOG ☐ SNOW ☐ HAIL ☐ UNK.   49 PREMISE ☒ HWY.-ST.-ALLEY ☐ RAILROAD ☐ RESIDENCE ☐ CHURCH ☐ SCHOOL ☐ CONVENIENCE ☐ INDUSTRIAL ☐ SERVICE STA.   ☐ BANK ☐ DRUG STORE ☐ APT./TWN. HSE. ☐ SHOPPING CENTER ☐ PARKING LOT ☐ OTHER COMMER. ☐ OTHER

52 TIME 0 2 0 5 0 7  08:00 ☐ AM ☐ PM ☒ MIL   S M T W ☒ T F S

54 VERIFY FOR ☐ Y   RAPE EXAM   55 TREAT. FOR ☐ Y   RAPE EXAM ☐ Y   56 CIRCUMSTANCES HOMICIDE & ASSAULT  57 CODE   LOCATION: RAPE

58 WEAPON USED ☐ FIREARM ☐ KNIFE ☐ HANDS, FISTS, VOICE, ETC. ☐ OTHER DANGEROUS   59 DESCRIPTION OF WEAPONS/FIREARMS/TOOLS USED IN OFFENSE ☐ HANDGUN ☐ RIFLE ☐ SHOTGUN ☐ UNKNOWN

### PROPERTY DESCRIPTION

60 QUANTITY   61 STOLEN, RECOVERED, LOST, FOUND OR DESTROYED (INCLUDE MAKE, MODEL, SIZE, TYPE, SERIAL NUMBER, COLOR, ETC.)   62 DOLLAR VALUE STOLEN / DAMAGED   63 RECOVERED DATE / VALUE

*(handwritten)* There was only (1) Alabama Uniform Incident /Offense Report made And That was on Nigel Walker. Could Someone Please Show me one on Belinda Walker.

☐ CONTINUED IN NARRATIVE

### DOLLAR VALUE

| 64 MOTOR VEHICLE | 65 CURRENCY, NOTES | 66 JEWELRY | 67 CLOTHING/FURS | 68 FIREARMS | 69 OFFICE EQUIPMENT |
|---|---|---|---|---|---|
| S R D C | S R D C | S R D C | S R D C | S R D C | S R D C |

| 70 ELECTRONICS | 71 HOUSEHOLD | 72 CONSUMABLE GOODS | 73 LIVESTOCK | 74 MISCELLANEOUS |
|---|---|---|---|---|
| S R D C | S R D C | S R D C | S R D C | S R D C |

### VEHICLES

75 CHECK CATEGORIES ☐ STOLEN ☐ RECOVERED ☒ SUSPECT'S VEH. ☐ VICTIM'S VEH. ☐ UNAUTH. USE ☐ ABANDONED

76 # STOLEN   77 LIC. 3B1762L   78 LIS. AL   79 LIY. 2007   80 TAG COLOR Blue/White   81 VIN 2 F A F P 7 4 W 4 X X 1 2 4 3 9 7

82 VYR 1999   83 VMA FORD   84 VMO CROWN   85 VST 4-DOOR   86 VCO TOP: GREEN BOTTOM: GREEN   87 ADDITIONAL DESCRIPTION

88 STOLEN MTR. VEH ONLY ☐ BUS. ☐ RES. ☐ RUR.   88 AREA STOLEN   89 OWNERSHIP ☐ TAG RECEIPT ☐ BILL OF SALE ☐ TITLE ☐ OTHER   VERIFIED BY:   90 WARRANT SIGNED ☐ YES ☐ NO

91 AUTO INSURER NAME (COMPANY) ADDRESS (STREET, CITY, STATE, ZIP)   92 PHONE

*(handwritten)* My car is Green not Grey or Blue, Black S

MOTOR VEH. RECOVERY ONLY REQUIRED FOR 24xx UCR CODE   93 STOLEN IN YOUR JURISDICTION? ☐ YES ☐ NO WHERE?   94 RECOVERED IN YOUR JURISDICTION? ☐ YES ☐ NO WHERE?

TYPE OR PRINT IN BLACK INK   ACJIC-32 REV 8-02

INCHES | 1 | 2 | 3 | 4

*(handwritten)* The Defendant And I Purchase This Car In 2006, Her Name

## WITNESS LOCATOR
## DETECTIVE DIVISION

### PERSONAL INFORMATION

NAME        Keith Mosier                    TELEPHONE  334-271-3704

CELL  799-9194      PAGER _____    E-MAIL _____

R/S W/M  HT/WT 6'0/130  DOB 08-19-1962  AGE  44   SSN  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

### RESIDENTIAL INFORMATION

213 Oak Forest Dr                           Montgomery
STREET                                      CITY
Montgomery                  Alabama            36109
COUNTY                      STATE            ZIP CODE

### EMPLOYMENT INFORMATION

R AND R SUPPLY COMPANY                      334-213-0351
COMPANY/EMPLOYER                            TELEPHONE
830 Plantation Way                          Montgomery
STREET                                      CITY
Montgomery                  Alabama            36117
COUNTY                      STATE            ZIP CODE
Sales
POSITION/SHIFT                              SUPERVISOR

### ALTERNATE CONTACT INFORMATION

Carla Mosier                               SAA
NAME                                       TELEPHONE
SAA                                        Montgomery
STREET                                     CITY
Montgomery                  Alabama
COUNTY                      STATE            ZIP CODE
Wife
RELATIONSHIP TO WITNESS                    MISCELLANEOUS

Cpl. E.B. White #353            2/6/07
DETECTIVE                    DATE @ TIME            CASE NUMBER

VOLUNTARY STATEMENT FORM
MONTGOMERY POLICE DEPARTMENT

*ONE DAY LATER*

DIV:                    BUREAU:                    DATE: 2/6/07

NAME: Keith Mosier                               AGE:   SEX/RACE:
ADDRESS: 213 Oak Forest Drive                    PHONE: 271-3704

CONCERNING:   Kidnapping 1st

LOCATION OF INTERVIEW PAB: YES NO (SPECIFY):

STATEMENT TAKEN BY:   Corporal E. B. White, #353 and Detective S. B. Edwards,
#033

Beginning time 1057  Hours.          *10:57*

Q:   Mr. Mosier, am I saying that correctly?

A:   Yes, sir.

*They TOLD Him the time*
*HE Said olive Rd/ Belinda Said Twain curve and Hackle Dr.*

Q:   Yesterday at approximately around 8 o'clock what did you witness?

A:   I witnessed as I was heading north on Oliver Road, tow cards turned
south on Oliver Road from Hackle Drive and it was a black male driving
the car on the outside, they were too wide coming around that turn and
they actually cut off someone that we headed southbound, you know, they
cut them off.  So I pulled off the road because I had no one, I looked
in my driver side, rear view mirror and saw the outside car, which had
the male driving it, bumping the other car, trying to run it off the
road.  I saw it, definitely twice, it feel like three times probably, it
was several hits.  At that point I turned around to follow it to see
what was going on, I had lost sight of them at that point because they
went around the corner.  When I got back in traffic and turned around
that corner, I saw the, the car that had been on the inside that was
getting banged, was turned around completely and facing back towards us,
you know in the middle of the street.  The car that had been banging it,
was pulled up right next to it.  The was right in front of the Learning

cp/D1484          *Twice, several, Three times probably     Oliver DR.*

_____                    _____
Detective Signature                    Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts,
values and/or descriptions given by me in this statement are the whole
truth to the best of my knowledge and belief.

_____                    Page 1 of 6

*[handwritten annotations: "(EXHIBIT H) Never push her IN THE CAR PUT IN CAR", "BEFORE Twain Curve", "HE Assumed", "She voluntarily got in / The car"]*

Tree, right before Twain Curve and I saw, I assumed it was a fellow that was driving, it's a tall black man had taken the little kid, the little small child out and was holding by both hands, you know. I don't know whether he, the child was actually on the ground or above the ground. The arms were straight up. And I saw him put the child in the car and there was a truck that was behind me, that pulled out around me at that point, a blue pick up truck. So I turned to see what was going on with that and when I looked back, I had seen the women next to the car before I turned my head. When I turned back, I didn't see her any more, so I don't know whether she voluntarily got in the vehicle or she was forced in there or what. When the, any way I turned back around and the doors were already closing or and the truck or the car had dipped into an _____, I'm sorry.

Q:    Okay. *[handwritten: DON'T NO]*   *[handwritten: NEVER SAW HER Forced]*   *[handwritten: Meaning more the one She CLOSED her own Door]*

A:    And it took off and it accelerated fast and the fellow in the blue pick up that had gone around me, stayed in that far left lane, which is actually the on coming traffic lane and went around both vehicle. Well the vehicle that was stopped in the middle and it was, you know he on the cell phone, he was obviously intending to pursue that vehicle. So the truck in front of me and I, we both pulled up, you know as we were, you know and there was no one in the car that had been turned sideways or turned back around. The doors were still open and nobody in there.

Q:    If you can recall, the car that was doing the banging *[handwritten: Earlier HE Said when he got there HE Seen the woman NEXT to the car]*

A:    Uh-huh. *[handwritten: IF You SAW us get IN the car why would we Still]*

Q:    ...what kind of vehicle was it? *[handwritten: GREEN   Be there   HE STATED IT Was A Ford LTD ...]*

A:    It was, I wanna say it's four door, it was a big, you know mid size car, dark blue, maybe black or charcoal, it was a dark car. Again, they turned pretty quickly, you know then I saw them in the rear view mirror and then I saw them from, you know, probably 30, 40 feet away. The other car was more of silverish or a dark gray, you know it was a dark silver or a dark gray.   *[handwritten: Belinda CAR IS GREEN]*

Q:    How many times would you saw that the big body vehicle banged the other vehicle?

A:    At least twice, I feel like more that than, but I know for sure, it did it more than once, it wasn't just a glancing blow, it was something

cp/D1484   *[handwritten: HOW MANY times]*   *[handwritten: STATEMENT KEITH mosley]*

_____          _____
Detective Signature      *[handwritten: IF you SAW them get IN the car why would you look for the to be There]*       Witness Signature

Signature of Person Giving Statement: I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____

Page 2 of 6

(EXHIBIT I)

that was, you could definitely tell that it was hitting it hard, trying to, you know at that point I thought maybe it was a road rage, somebody cut somebody else off and they were trying to do something, you know, but he was obviously trying to push that car off the road or, you know knock it off the road.

*HE stated he saw me [illegible] throwing her [illegible]  /  NO struggle, NO, SIR*

Q: Did anytime, did you see anyone in a struggle?
A: I did not see any struggles, no, sir, I can't say that I did. Didn't see anybody raising hands or pushing or grabbing or anything. The amount of time that I saw the child there, again, I couldn't say whether the child was on the ground and whether, you know it was standing on the ground and whether the, the person that had him was just holding him and guiding him to the car or whether he was actually snatching him and throwing him. You know I mean it just, it did not appear to be that violent and that time. You know that's all I can really...

*Didn't seem to be violent so how could I be banging her car*

Q: You say the other car, the car that was being hit. You said it was a silver or a gray car. — *THE CAR IS GREEN*
A: Uh-huh.

Q: Small, medium, large, _____?
A: It was a medium car, I would say, I think it was four door, also.

*HE Said he knew IT to be A Clown [illegible]*

Q: But you don't remember the make or model on either one? *DR LTD*
A: No, I mean I would be guessing, I remember that one. The one that was doing the hitting was a newer model car, it was, you know, it was not quite as blunt or squared off, like the other car was, so it was a newer make, but as far as whether it was two or three years old, I couldn't tell you.

Q: And the car that was doing the bang, the big dark colored vehicle?
A: Uh-huh.

Q: How many occupants were in it?
A: I only saw one and he was, you know right up on the steering wheel. All I could see was about from chin up and he was right on the steering wheel _____

*/ Witness made the statement [illegible] did not see anything*

cp/D1484

_____

_____                    _____
Detective Signature                                Witness Signature

Signature of Person Giving Statement: I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____
                              Page 3 of 6

*[handwritten top margin: HE SAW ME.]*   *[handwritten: Green]*   *[handwritten: To See Them]*

Q:   And the car that was being hit, the silver or grayish car, how many occupants did you see hit?

A:   When they first went by me, I didn't see any because I was looking at that fellow because he was the one the was coming right in my lane and again I saw him pretty clearly, but I didn't have a chance to see them because this, I mean it, it, happened pretty quickly.   You know that point they were, you know behind me and I was looking and then I noticed the car hitting the other car and I really couldn't tell, you know what was going on, how many people were in either car at that point.   It was all in a small rear view mirror, but I did see that they were, I mean it was obvious that he was trying to run it off the road.

*[handwritten: No whether the child was on the ground or not]*
*[handwritten: In Another State he said he didn't]*

Q:   When you turned around and followed them or caught up with a, I guess paned at, could you see any weapons that the black male subject had?

A:   I didn't see any weapons.   The only time I remember seeing him clearly was, he had both hands, one on each of the child's hands.   Didn't see him, you know it wasn't like he hand one hand doing any of the stuff.

*[handwritten: IF I WAS CARRY the Child You would have Seen them In my]*

Q:   And the way you saw him tugging that child, you couldn't tell if he's actually carrying him by both arms or if he was walking him.

A:   Right because it was very low, it was between the cars and it was up the hills from where I was, so it was hard to tell exactly when I first saw it, I thought that he was just guiding the child, but I mean the child could have been a foot of the ground and he just, he was a really small child and he was a really big guy and he was really, I'm sure it would have been a struggle from him, just to, you know, just, you know, just from looking at him, my first impression that the child was standing on the ground and he had one hand in each of his.

*[handwritten: So how could I Throw him in the car]*
*[handwritten: In order to guide him he mus...]*

Q:   From your position, could you tell if the child was upset or distraught or anything like that?

*[handwritten: was on the ground]*
*[handwritten: Within this length you could have heard a cry]*

A:   I, I could not, no I was probably 30 or 40 feet away and there was another vehicle in front of me and there was probably, there was a fairly good gap between that truck and the vehicle there then.   The, you know what was going on.   There was nothing else going on between that, but there was a fairly good gap.

Q:   Could you tell what the female was doing in the other car?

A:   I'd say, the only time I saw her, she was standing between the cars, she's very slight, you know compared to him again.   Now I don't know how tall he is, but she looked very slight compared to him, small. I didn't

*[handwritten left margin, vertical: IF I WAS CARRY him + I SAW him in my ARM Would have SAW IN the car So How WAS HE TOWN IN THE CAR]*

TCP/D1484

*[handwritten: BOTH WITNESS Stated Someone WAS in Front of them]*

*[handwritten: Again He STATED he could NOT see Above there or more times]*

_____                    _____
Detective Signature                        Witness Signature

Signature of Person Giving Statement:   I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____

Page 4 of 6

*There was never a 12 ug 9*

*This is the part of my statement that I didn't say*

see her raise her hands or anything, but again there was stuff going on around me. I didn't, I wasn't just focused on that because you know the person pulled up next to me and went around, so I was, you know it didn't take long, you know. *HE MADE THE STATEMENT again I Forced me*

Q: So you don't know how she was placed in the car?
A: I don't know if she got in voluntarily, whether she was pulled in or forced in or what.

Q: You first came in contact with them, you said on Oliver Road at Hackle Drive?
A: Right, just before Hackle, just off of Hackle. *OLIVER Road is wrong witness said this happen*

Q: And they ended up where?
A: They ended up in front of Learning Tree on Oliver Road, just before Twain Curve. And he was in the, you know the right hand lane from my perspective heading towards Twain Curve. The other car was turned 180 degrees around facing back towards me. Facing away from Twain Curve and that was dead, almost dead center of the road. *HE states oliver Rd, And Twain Curve*

*The other witness said in the LOT*

Q: Anything else you can remember?
A: No, I can't.

Q: And that's something you observed? *FIRST* *HE said I came off Hackle*
A: Yes, ma'am. *And onto oliver*

Q: And you and a guy in a blue truck and anyone else that you know may have stopped?
A: Well again there was, like a dark brown pick up truck that they had cut off when they came off of Tackle onto Oliver Road and he stopped, but as soon as they, you know, got through the intersection there, he continued on. So when I pulled in and turned around he was already ahead of me. So he was in front of me and what he did, I don't know after that, I mean we both after everybody got in their cars and moved back off or whatever, except for the one that was still sitting there. I couldn't tell you, he turned right and continued on straight. At that point they were gone, I couldn't even see. When I got to that stop sign at Twain Curve, they were gone, so I don't know where he went, but, you know he wasn't back on that road. He saw probably more than I did because he didn't have to stop and turn around he was already behind them and then this blue truck that had some kind of pet company, some logo on the

cp/D1484

_____                    _____
Detective Signature                          Witness Signature

Signature of Person Giving Statement: I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____                    Page 5 of 6

side.  Like I said he was on the cell phone and he was in the parking lot to my left after I turned around and you know he was like this and I kind of waived like, you know and so he went right behind me and I felt like he was already on somebody, he was definitely on top of, he know what was going on.  Well he knew that this guy had been trying to bang his car.  I mean we didn't know what was going on around, around the corner, but so he probably got a better view that I did it, cause again, I had to turn around and I lost sight of him and when I came back around the turn, whatever had happened, the other car was already turned around, that had been spent around.  I assumed it's been sprung around because I don't think that you can, there's no way she could have stopped and turned herself physically in a three point turn or something like that, in the time frame.  There's just no way she could have done it that quickly.  So I don't know if she was trying to turn into learning tree or what at the point.  He must nailed to get, cause you know he was here, unless he came back on here, I don't know, I'm just right now, but those two, probably had a better view because they didn't have to stop and one was ahead of me and one was on the outside of me, so.

Q:   Anything else you wanna say?
A:   Nothing I can think of.

Ending time 1107 Hours.

*INTERVIEW LASTED 10Minutes, EACH Interview Is based on the Time Frame of Ten minutes, who's Talking who was when to stop*

cp/D1484

_____        _____
Detective Signature                Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____        Page 6 of 6

*WHICH... FULL COUNT OF KIDNAPPING I WAS CHARGED WITH*

# WITNESS LOCATOR
## DETECTIVE DIVISION

### PERSONAL INFORMATION

NAME _____Nigel Walker_____     TELEPHONE _334-235-8294_

CELL _____    PAGER _____    E-MAIL _____

R/S _B/M_ HT/WT _____    DOB _9/28/03_ AGE _3_ SSN _____

### RESIDENTIAL INFORMATION

_____4588 Wimbledon Rd._____          _____Montgomery_____
STREET                                       CITY
_____Montgomery_____  _____Alabama_____    _____36116_____
COUNTY              STATE                  ZIP CODE

### EMPLOYMENT INFORMATION

_____N/A_____                      _____
COMPANY/EMPLOYER                       TELEPHONE
                                       Montgomery
_____                        _____
STREET                                 CITY
_____Montgomery_____  _____Alabama_____    _____
COUNTY              STATE                  ZIP CODE

_____                        _____
POSITION/SHIFT                         SUPERVISOR

### ALTERNATE CONTACT INFORMATION

_____Belinda Walker_____               _____SAA_____
NAME                                   TELEPHONE
_____SAA_____                      Montgomery
STREET                                 CITY
_____Montgomery_____  _____Alabama_____    _____36116_____
COUNTY              STATE                  ZIP CODE
_____Mother_____                   _____
RELATIONSHIP TO WITNESS                MISCELLANEOUS

_____Det. S.B. Edwards #033_____   _____   _____
DETECTIVE                          DATE @ TIME        CASE NUMBER

VOLUNTARY STATEMENT FORM
MONTGOMERY POLICE DEPARTMENT

DIV: Juvenile    BUREAU: Enforcement          DATE: 2/5/07

NAME: Belinda Walker                         AGE: 28 SEX/RACE: F/B
ADDRESS: 4558 Wimbledon Road                 PHONE: 235-8294

CONCERNING: Kidnapping 1st

LOCATION OF INTERVIEW PAB: YES NO (SPECIFY):

STATEMENT TAKEN BY: Detective S. B. Edwards, #033

---

Beginning time 1541 Hours. *3.4/p.m.*

Q:    State your name.
A:    Belinda Frazier Walker.                 *SHE LIVES AT 4588 Wimbledon RD.*

Q:    Belinda, you live at 4558 Wimbledon Road?
A:    Yes, ma'am.

Q:    You have three children, yes?
A:    Yes, ma'am.

Q:    You have a 12 year old, a 6 year old, and a 6 year old?
A:    A 8 year old, a 3 year old, and a 6 year old.

Q:    Okay. What's the 8 year old's name?
A:    Jason Xavier Frazier.                   *THIS IS only (3) whats*
                                              *THE Name of the other (3)*
Q:    The 6 year old?
A:    Andrenique Nicole Walker. *NAME IS Spelled ERN'DRINQUE*

Q:    And the 3 year old?
A:    Nigel Christian Walker.
AC/D1125

---

_____           _____
Detective Signature                Witness Signature

Signature of Person Giving Statement: I hereby affirm that the facts,
values and/or descriptions given by me in this statement are the whole
truth to the best of my knowledge and belief.

_____          Page 1 of 7

Q: Can you tell me what happened today?

A: Yes. On my way to going to my first job which is _____, I was actually going to pick up some papers from the office. As I was pulling out the office, I'm on the two way talking to my coworker that I just left and some, I don't know how, but I looked in the rearview mirror and I saw Earnest in the rearview mirror and so I told my coworker to call the police because I saw him in the rearview mirror, but as I was talking to them, Earnest started flashing his lights. When he started flashing his lights, I, I sped up and once I did, he actually got behind me and hit me from behind. So after that, as he see that I didn't pull over, he got on the side of me and started to try to run me off the road and he knocked into my several times and tried stop in the, in front of me, in front of the car; however, when I still kept going, my car spent around. Due to that, I guess the car would not go anymore and once the car stopped, he got out the car and he dragged me out the car first and then I started screaming telling him you know don't forget about Nigel or whatever, something about Nigel to get his attention about not leaving my baby in the car and he pulled Nigel out the car and after we got into the car, he started talking about, we sped off and he punched me in the face several times. As we were going down, he jumped on the interstate and he continuously hit me and my head hit the window. He finally decided to go to his brother's house and from thereon, he basically was just trying to intimidate me, told me what he was going to do and after that I talked to my brother's girlfriend to, you know, told her to get me help. After that, I guess she dialed 911. Then she called Earnest mother to let her know what was going on and then his cousin. Well, his cousin stopped by. As his cousin was stopping by, Earnest brother's girlfriend she actually started calling again because she couldn't get anyone at the time and from there, Earnest came back in the house and he told me not to leave the middle room where we was at and my son was in the other room. He just told me how he was prepared for the police to kill them and you know just making, making guilt trips on me about what had happened. After that, when everything was _____ he was drinking like alcohol I guess cause he said to ease the pain or whatever. After that, the sheriff I guess bust in and

AC/D1125

Detective Signature _____ Witness Signature _____

Signature of Person Giving Statement: I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____

Page 2 of 7

*[handwritten top margin: "She said I tryed to stop in front of her and the car were out of control."]*

*[left margin handwritten: "Why would you tell a child to get on the side someone is hitting"]*

Q: So he rammed your car and everything and spins you out of control basically to stop your car, he initially snatches you from the car?

A: He literally drug me out the car.

*[handwritten: "Didn't no Nigel was in the car" / "She told me to get Nigel"]*

Q: So he didn't know Nigel was in the car until you started screaming for Nigel to remind he was in the car?

*[handwritten: "Why would my child be"]*

A: Right, because the side that he was hitting Nigel was on the other side. So I made Nigel get on the opposite side that he was hitting me on and that's when Nigel bumped his head and you know he was hollering and screaming. By then like I said when the car stopped, he opened my door cause really what I was trying to do is reach down and get my gun that was under the seat, but I couldn't get to it cause by then he had drugged me and you know I had _____ and I fell out of them and I was really on the concrete when he was pulling me in the car.

*[left margin handwritten: "He didn't do it"]*

*[handwritten: "Statement before this she never said anything about being on the ground" / "Johnny in the police report she said Johnny now it's Rick or Jame..."]*

Q: You had someone in the car with you?

A: Yes, I did. His name Rick. He is a church member's uncle and we all live in the same neighborhood and Rick was actually getting dropped off at his mom's house which is like right along where my grandmother stays on Wares Ferry Road cause I take care of my grandmother during the day.

*[handwritten: "In the police report she said Johnny"]*

Q: What's Rick's last name?

*[handwritten: "In her report she gave the person in the car real name Johnny"]*

A: I think it's Lee and I think his real name is Johnny. I think Johnny or James Lee.

*[handwritten: "She stated and we got in the car"]*

*[handwritten: "Here she said in the back seat"]*

Q: What did he do when this was going on?

A: He got out the backseat and ran I guess to get help.

*[handwritten: "Now she's saying he jumped out the front seat to the back"]*

Q: So he was in the backseat with Nigel?

A: No, he jumped from the front to the back after the car kind of like spent and that's when I couldn't accelerate anymore and he jumped out of the side that Nigel was originally on and ran it's like a lot of businesses over there and there was a lot of people outside and he jumped out and ran that way.

*[handwritten: "Why didn't this Rick, Johnny, James make a report or be a witness"]*

AC/D1125

*[handwritten: "Statement above she said that she thought he ran to get hel..."]*

*[handwritten: "Here she said he ran away"]*

_____          _____
Detective Signature                              Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____          Page 3 of 7

Q: And this, this all took place this morning here in Montgomery City Limits on what road?
A: I think that is Twain Curve/Hackel, Hackel Drive.

Q: What was going through your mind when all this happened?
A: Well, _____ and that Nigel was going to end up getting hurt.

Q: Were you scared for your life?
A: Yes, mine and his.

*why was She STill seeming me*

Q: And this has been an ongoing problem between you and Earnest?
A: Yes, ma'am.

*Time*
*We JusT Meet  Jan. 29, 2007*

Q: Who is Earnest?
A: Earnest is my ex-husband and my kids father.

Q: And he is Earnest Walker?
A: Yes, ma'am, Junior.

Q: Junior. How long were you and he married?
A: Almost 8 years.

*ARE THERE ANY police REPORTS*

Q: When did the divorce…
A: July 6, 2006.

Q: Prior to the divorce, was there domestic problems between you and he?
A: Yes, ma'am.

*NEVER HAPPEN*

Q: What kind of problems?
A: He used to jump on me. He used to kidnap my kids and run to Ft. Deposit. He used to threaten me when I used to go to my family's house and I signed numerous warrants and he would end up going to domestic violence like evening programs to and also the biggest incident that took us where we are now is when my kids got hurt and you know after that, DHR got involved. So we have like a lot of history of domestic violence.

AC/D1125

_____                    _____
Detective Signature                                Witness Signature

Signature of Person Giving Statement: I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____                    Page 4 of 7

Q:    Now there's a history with him being physically abusive to you.
A:    _____.

*DID you SEE yourself*

Q:    Has he been physically abusive to the kids?
A:    He did.  He used to be like, he never beat on them in front of me, but I
      knew that my son was intimidated.  Nigel, the youngest, never really was
      raised in the house with him cause I got him locked up, but my youngest
      two are pretty intimidated of him.

*Never said I did something to get*
*Locked up.*

Q:    What set Earnest off today for him to do this?

*I WAS FOUND NOT guilty*
*of that Charge so it Never*
*Happen*

A:    Because I've been ignoring his calls and every since I've been indicted
      to Grand Jury, also because I've did something really bad.  Two years
      ago when Earnest jumped on me, his brother came to my rescue and I ended
      up sleeping with his brother and after that, it had been a big
      confusion.  When I got Earnest locked up, he has not let that go and
      then he wants to move back in the house and I would not let him move
      back in the house and it's been ongoing after that, him stalking me, him
      leaving messages when I won't answer the phone, him popping up watching
      me to go places.

*She got me Locked up To sleep with my brother*

Q:    So you don't have an ongoing relationship now with his brother?  *She do*
A:    No, ma'am.

*BECause I WAS Found    my Evidence will show I never*
*NOT GUILTY it Never Happen    HAD To Stalk her she had my son*

Q:    And that's not the brother's house you were at?  It's a different
      brother?
A:    No, right.  That's the brother by his mother.  The brother that I, was
      his, on his dad's side.

*She TOLD JUDGE KELLY and D.H.R. she never*
*Slept with my brother*

Q:    When was the last time you had contact with Earnest prior to today and
      then of course all the phone calls?
A:    Yesterday, he called me.  He called me and I started ignoring my phone
      because I was at work and then he just, he just kept going on and on and
      on and on and I just started ignoring my calls and that's why he, you
      know, upset now because I ignored his calls.  \ *We talked the Day before*

*Jan 29, 2007 we went out To Eat and to the*
*moves,*

AC/D1125

*She said she started Ignoring my calls*
*So before that, what she's saying we were talking*

_____          _____
Detective Signature           Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts,
values and/or descriptions given by me in this statement are the whole
truth to the best of my knowledge and belief.

_____          Page 5 of 7

*[handwritten top margin: "So w hed went for 2 ... Filed ... James, Johnny ... THAT morning, She never mention picking up this person, so where did He come From."]*

*[handwritten left margin: "She NEW STORY"]*

Q: When you got in your car this morning to head to your work, did you see him when you left your house?

A: Well, when I left my house, I didn't go straight to work. I dropped my two kids off. One kid goes to Fitzpatrick. The other child goes to McKee Elementary. Usually that's not even my routine. I usually drop all three of them off at Kinder Care on Buckboard Drive and then I go to my job. So I didn't see him at that time.

Q: What was, I know you said Nigel was screaming and everything because he hit his head, but how is, how is he when Earnest got him in the car and ya'll were driving off?

A: He was hollering and telling him to stop hitting his mommy.

Q: Is there anything else you can think of that you hadn't already told me?

A: No, not really. That's all I can think of for right now.

Q: And you were in fear of your and Nigel, you and Nigel's life?

A: Yes, ma'am. *[handwritten: "THIS is HER FIRST Statement About this MATTER   ↑ IS LiKe She being Lead On What to say"]*

Q: Because of the past history of being, of him being physically abusive?

A: Right, and, and this is not the first incident. Like I was telling you when I went to Grand Jury, he followed me to my grandmother's house when I was in the car with his brother and injured his brother and that's why we have to go to court on that also. So he has a history of following and waiting me out.

Q: *[handwritten: "She Never mention This in the Statement"]* How did he injure his brother? *[handwritten: "HER or Terry Didn't Show UP   FOUND NOT Guilty"]*

A: He bust him in the head. He has I think domestic violence too. It's at the County right now and I don't know if he's got indicted yet, but I went to Grand Jury two weeks ago. *[handwritten: "How can she be coming From meeting with the Grand Jury on the day this Indicted happen. First Comes the Charge then the indict ment later."]*

Q: Now is this the same brother that you had the relationship with as well?

A: Yes. *[handwritten: "HE WAS Living in the House With BeLinda"]*

Q: So possibly may think that there's a relationship that's ongoing?

A: No, because what happened after that incident happened and Nigel once

AC/D1125

*[handwritten: "She TOLD D.H.R. And ... Kelly THAT our Kids was NOT Around terry Knight."]*

_____
Detective Signature

_____
Witness Signature

Signature of Person Giving Statement: I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____
Page 6 of 7

*(handwritten, left margin, vertical):* HE would NOT Leave me Along

*(handwritten, top right):* She put my brother iN Jail Becaus HE Could have TOLD EVERY thing

again was involved. I broke it off with his brother and then his brother, his brother didn't understand to leave me alone so I ended up having to put him in jail and that's how me and his brother cut off ties because I was tired of these series of incidents happening. So he, he knew that there was nothing going on with his brother because his brother was just in the County for like three months. He just got out on the 1st so he, he didn't think that.

Q:  Anything else you can think of?
A:  No, that's it.

Ending time 1551 Hours.

*(handwritten):* The police REPORT STated he was charge in Tresspassing

*(handwritten):* How did She No THE DATE IF she whatein In contact with him.

*(handwritten, diagonal):* INTERVIEW LASTED 10 MINUTES

*(handwritten):* I HAD him put iN Jail because he Would NoT Leave me along

AC/D1125

_____          _____
Detective Signature                              Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____          Page 7 of 7

## WITNESS LOCATOR
## DETECTIVE DIVISION

### PERSONAL INFORMATION

NAME      Thomas W. Morris                    TELEPHONE    334-215-9896

CELL  334-391-3394    PAGER                        E-MAIL

R/S  W/M   HT/WT  6'1/225   DOB  1/31/57   AGE  50   SSN   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

### RESIDENTIAL INFORMATION

232 Wiltshire Dr.                          Montgomery
STREET                                       CITY
Montgomery                  Alabama                36117
COUNTY                       STATE              ZIP CODE

### EMPLOYMENT INFORMATION

ABS Business Systems of Montgomery          334-396-0809
COMPANY/EMPLOYER                            TELEPHONE
898 Plantation Way                          Montgomery
STREET                                       CITY
Montgomery                  Alabama                36117
COUNTY                       STATE              ZIP CODE


POSITION/SHIFT                              SUPERVISOR

### ALTERNATE CONTACT INFORMATION

Rose Morris                                 SAA
NAME                                        TELEPHONE
SAA                                         Montgomery
STREET                                       CITY
Montgomery                  Alabama                36117
COUNTY                       STATE              ZIP CODE
Wife
RELATIONSHIP TO WITNESS                     MISCELLANEOUS


Cpl. E.B. White #355        2/6/07 @ 1504
DETECTIVE                    DATE @ TIME          CASE NUMBER

EXHIBIT E

## VOLUNTARY STATEMENT FORM  *ONE DAY LATER*
## MONTGOMERY POLICE DEPARTMENT

DIV: Juvenile        BUREAU: Enforcement         DATE: 2/6/07

NAME: Thomas W. Morris        *1 COUNT ON Nigel*     AGE: SEX/RACE:
ADDRESS: 232 Wiltshire Drive      *WALKER.*        PHONE: 215-9896

CONCERNING: Kidnapping 1st Degree

LOCATION OF INTERVIEW PAB: YES NO (SPECIFY): *WITNESS SAID Oliver RD.*

STATEMENT TAKEN BY: Corporal E. B. White, #353
Witnessed by Detective S. B. Edwards, #033

*TWAIN CURVE*

*OLIVER ROAD*  *HACKLE Drive*

Beginning time 1506 Hours.  *→ 3:06*
*You FIRST HAVE TO HIT TWAIN CURVE, OR HACKLE Drive TO GET TO OLiver Road uNLESS YOU COME FROM the Lower ENd.*

Q:   Okay, Mr. Morris, could you tell me what you witnessed yesterday approximately around 8:00 a.m. yesterday morning?

A:   Sure. I was coming to work. I had just turned onto Oliver Road from East Boulevard actually from the loop there and I was coming around the bend. The speed limit on that road is about 25 miles an hour. I was doing approximately 25 to 30 miles an hour and noticed a vehicle, oncoming vehicle, traveling at approximately 50 to 60 miles per hour coming almost head on to me side by side to another vehicle. The vehicle left coming head on towards me was a Ford LTD Crown Vic and that's all I could look at and focus on and he wasn't going to budge and coming at me with such high speed, I had to dart into a parking lot to evade him and I thought it was awfully odd that he was trying to pass somebody, you know, on that little road and I looked back in my side view mirror and noticed that he had then bumped the other car and figured that this was not just somebody passing, but this looked like a road rage issue. I immediately decided to do a u-turn, try to get his license tag number and call 911 all at the same time. Unfortunately, I had someone in front of me going about the speed limit so it took me a little bit to get back around the bend and unfortunately, now I find out

AC/D1130

*So How did HE see my TAG # ?*

_____              _____
Detective Signature                     Witness Signature

Signature of Person Giving Statement: I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____              Page 1 of 6

coming around the bend what was happening. I should have passed them, but of course, I didn't know at the time. So that person turned off. I come around the bend of Oliver Road back towards East Boulevard and noticed that the one Chevrolet vehicle, smaller vehicle, had been kind of I guess turned 180 degrees and was sitting in the middle of the road with the driver's side door opened and the car was facing me right in the middle of the road as I was coming around the bend and noticed a male handled with one hand each a small child and a woman and he was physically throwing them into his car, the LTD Crown Vic) At which time I remember I'm on 911 and I'm trying to, to report a road rage type thing and I was on the line with the 911 operator and told her that it's no longer a traffic issue this is a kidnapping. I read off the license tag number. As he was speeding off, I of course accelerated to try to catch him to get that license tag number. He turned right onto the, the Loop there which then he turned right which is northbound on East Boulevard. I proceeded to follow him. He accelerated very quickly. I pursued him at speed of 100 plus miles an hour. No one else was around at that time. All the traffic was headed southbound fortunately. So no one else was endangered. I traveled for a couple of miles, but unfortunately, some, a couple of cars up ahead did get in my way. He went around them. I did not want to endanger anyone so I had to wait to get around them and then accelerate again trying to catch him up around the, not up around, but at the Coliseum Boulevard intersection is where I lost him. He ran through a red light. It was heavily populated with cars going every direction and at that time I had to break off the, the pursuit for fear of endangering my life and others. I was telling the 911 operator I've lost him. As far as I know, he's proceeded northbound on North Boulevard and that's about all I could tell her at that point.

Q: So you did say you actually witnessed him get physical with the female?
A: Oh, yes.

Q: And the baby?
A: He put the child, he took the child with one arm and just threw it. I wasn't sure if it was male or female as my pronoun it, but threw it, the child, into the car and took the female and put her into just literally

AC/D1130

_____       _____
Detective Signature                    Witness Signature

Signature of Person Giving Statement: I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____       Page 2 of 6

*READ her Report*    *First I threw her the I Shoved her*

just shoved her right into the, the front seat of the car and proceeded
to punch her a couple of times in the front seat as they're driving off
and I'm sure she was struggling at that point and trying to, to get out,
but you know I felt so bad that I couldn't stop that before he drove
off.   I mean I if I'd been there maybe 10 or 15 seconds sooner.

Q:   How many occupants was in the other car that was being hit?   *Belinda never said anything about trying to get out*
A:   Was her and of course at the time I didn't know a child was in the car.

*How did you see me hit some, but you didn't see the other person in the car*

Q:   Uh-huh.
A:   He was the only one that I, and I barely got a glimpse of her because I
was focused on the oncoming LTD being halfway in my lane.   I was not
focused on her, but she was all I saw in the car at the time.

*Now Again he no its Altd) You cant me Tell me what color the car*
*was but you can tell me what happens*

Q:   What kind of car did she have?
A:   I don't know my Chevrolet's real well.   The Chevy, I want to say it was
maybe a Chevy Corsica or something along those lines.   It's a, it's a
compact to midsize.   I think it was light gray or light blue and the
LTD, I call it LTD.   LTD made by Ford, split models often the mid-80s
and you know they, they call them several things, but the LTD Crown Vic
was the model I saw and I estimated it to be around a, about a 5 or 6
years old model and told the 911 dispatcher that it was in fact an LTD.
I know what it is, but they may not have known, but anyway, I read the
license tag to her and told her it was either a dark blue or black in
color.

Do you remember the tag number?   *GREEN*
Of the…                                     *First HE Said gray or*
                                            *blue, Then HE Said*
Crown Vic.   *(EXHIBIT G)*                  *blue or Black*
…Crown Vic.   I'm afraid not.   I did read it off to the 911 operator
though.

Q:   And what was the 911 dispatcher's reaction to this?
A:   Actually I, I wasn't sure that she was, in fact, in touch with anyone
     else.   I was a little concerned about that.   I'm in a high speed chase

AC/D1130

_____          _____
Detective Signature                      Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts,
values and/or descriptions given by me in this statement are the whole
truth to the best of my knowledge and belief.

_____          Page 3 of 6

*[left margin handwritten:] Now I HAVE threw, put, Literally Shoved*
*throwing them into the car,*
*This witness*
*Now I went from OLIVER ROAD To Collyseum BLVD, And This witness Never said any thing about my purchase Belinda*

which I shouldn't be in.  I realized, but I was fearful for this woman and child's life and I was hoping that a police cruiser would be there, you know, within a couple of minutes, but unfortunately, we, I guess you all were responding to a bank robbery at the same time.  So it just, it didn't happen.  I lost them.

*[handwritten: His Statement of how they got in the car change 3 times]*

Q:  Could you tell from where you were positioned what this woman and child's demeanor was as far as, I mean so he shoving them forceful putting...

A:  You mean if they're voluntarily going or not?  That was not a voluntary I'm going to get in the car with you and walk over there.  They were being shoved. *[handwritten: HE said he could Not See   He was To FAR Away + See Anything]*

Q:  Was she struggling?  Could you see any kind of like, like if she was crying or upset or if the child was?

A:  No, I couldn't.  I was too far away to see any, you know, what, what was happening with their facial expressions especially since I was coming up and looking at a profile position of them going into the car.  So I didn't see facial expressions.  I know that she was struggling.

*[handwritten: Never struggling]*

Q:  What type vehicle were you in?
A:  Cadillac SES.

*[handwritten: going into the car Not being shoved or push]*

Q:  Is that a truck?
A:  No, that's, it's a sedan, four door sedan.

*[handwritten: Now WE ARE going into the c...]*

Q:  The reason I'm asking we had a witness down here earlier and...
A:  Was he driving a gray pickup truck?

Q:  I _____ what he was driving.  But he said that there was a truck, a blue truck with like some type of _____ on it that followed him as well and a brown truck.  So obviously...

A:  I had a truck following me and I wasn't sure why that guy was following me cause I was directly behind the suspect's vehicle.  So again, a truck behind me with some like magnetic signage on it, didn't, didn't pay much attention to that, that was coming towards me at the time, but noticed

AC/D1130

_____        _____
Detective Signature              Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____        Page 4 of 6

*[handwritten left margin, vertical: he made the statement he did not see ... I am the statement he did not]*

that he had followed me when I turned around at Coliseum Boulevard. That's when I realized that I had either a stalker or someone else assisting in the, in the chase.

Q:    So you said you lost him at Coliseum Boulevard?

A:    Right.  I'm heading northbound on North Boulevard, you know, Coliseum Boulevard…

*FIRST HE SAid no one eise was In danger*

*Is west or south*

Q:    By Winn Dixie…

A:    …intersects there and major intersection, lots of cars.  I mean he just flew through that, that intersection.  I don't know how he missed getting hit, but I just, just couldn't see going through there with oncoming traffic every which way.  I turned right, which I guess in effect is actually at that point we were headed west on North Boulevard because isn't it, it goes north and then it turns and it actually heads west.  So Coliseum Boulevard I think probably goes more north and south, but I turned right or to the northerly direction on Coliseum and, and did a loop around the traffic and, and then came back to the office.  He was gone.  I mean he had accelerated well over 100 miles an hour.

*IF I WAS GONE How do you no How FAST I WAS going*

Q:    When you were following him, were you close to enough to see if he was physically abusive to her at that time as well or just when he, when he first put her in the car?

A:    When he first put her in the car, that's all I could see for sure.

*Now I PUt her In the car*

Q:    And you, and this, you got behind them on Oliver Road?

A:    That's correct.

*NEVER SAid Anything about me Hitting HER thur the Entire St*

Q:    Where the car ended up at?

A:    Which car?

*I WAS on oliver And not TwainCurve, Hacke(*

Q:    Both of them.  Cause we're told by her she thought that she thought she was at Twain and Hackel.  One of the witnesses, one said that they were at Oliver and…

A:    Okay.  Well, Oliver intersects at Twain Curve.

AC/D1130

*DET. TELLing witness were It WAS SAid To hAppen*

_____

_____                    _____
Detective Signature                         Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____              Page 5 of 6

*[handwritten: Behind Report Twain & Hackel]*

Q:    Right.

A:    Twain Curve connects to East Boulevard.  So if you're going north and south, East Boulevard is like this.  Twain Curve comes around and Oliver Road feds off of it and goes around a curve and then back down and connects, intersects with Plantation Way, which is where my office is.  So their vehicles were located exactly I would say between 30 and 50 feet away from the intersection of Oliver Road and Twain.  They were on Oliver Road.  Her vehicle was located almost directly across from or in line with the little childcare facility, okay, but it was pointed towards me as I'm coming up to it.  His vehicle of course was headed in the other direction and, and I had to scoot to just catch up to them and get the license tag number before he took off.

Q:    Anything else you can think of?

A:    No.

Ending time 1519 Hours. *[handwritten: 3:19]*

*[handwritten: HE Earlier STATED HE got the tag# AFTER jumping behind me AFTER I took off]*

*[handwritten: THE INTERVIEW LASTED 13 Minutes, leave me to believe They Were coached on WHAT To say]*

AC/D1130

_____

_____          _____
Detective Signature                                Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____          Page 6 of 6

# WITNESS LOCATOR
## DETECTIVE DIVISION

## PERSONAL INFORMATION

NAME   .Tameka Jenkins Axel                    TELEPHONE    334-227-8340

CELL  334-462-7006    PAGER _____    E-MAIL _____

R/S B/F  HT/WT  5'4/180  DOB  09-04-81  AGE  25  SSN   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

## RESIDENTIAL INFORMATION

219 Village Cir.                              Fort Deposit
STREET                                        CITY

Lowndes                    Alabama                36032
COUNTY                     STATE                 ZIP CODE

## EMPLOYMENT INFORMATION

Johnson Control                              334-241-5859
COMPANY/EMPLOYER                             TELEPHONE

130 6th St.                                  Montgomery
STREET                                       CITY

Montgomery                 Alabama              36104
COUNTY                     STATE               ZIP CODE

Production                                   Dave Penleton
POSITION/SHIFT                               SUPERVISOR

## ALTERNATE CONTACT INFORMATION

Rosie Carter                                 334-227-3880
NAME                                         TELEPHONE

P.O. Box 228 (Village Cir.)                  Fort Deposit
STREET                                       CITY

Lowndes                    Alabama              36032
COUNTY                     STATE               ZIP CODE

aunt
RELATIONSHIP TO WITNESS                      MISCELLANEOUS

Cpl. Thomas                02-09-07/0906          07-
DETECTIVE                  DATE @ TIME            CASE NUMBER

VOLUNTARY STATEMENT FORM
MONTGOMERY POLICE DEPARTMENT

DIV: Juv.          BUREAU:      Enforcement        DATE: 2/9/07

NAME: Tameka Axel
ADDRESS: 219 Village Circle        *1 COUNT OF*          AGE: 25   SEX/RACE:    F/B
                                   *KIDNAPPING*          PHONE: 227-8340

CONCERNING:   Kidnapping 1st Investigation

LOCATION OF INTERVIEW PAB: YES NO (SPECIFY):

STATEMENT TAKEN BY:   Detective S. B. Edwards, #033

Beginning time  0915 Hours.  *9:15*

Q:    State your name.
A:    Tameka Axel.

Q:    Ms. Axel, you are 25 years old?
A:    Yes.

Q:    You live at 219 Village Circle?
A:    Yes.

Q:    You are down here today in regards to  what?
A:    A statement on Ernest Walker.

Q:    How do you know Ernest?
A:    He's my cousin.

Q:    When was the last time you saw him?
A:    Monday in between 9 and 10.

Q:    Tell me what happened when you saw him during this time period.
A:    I was driving down I85, I passed him coming old the Old Searcy Road and
      he and Belinda was in the car, you know that all I saw and he kept on.
      I waived and kept going, he came up behind me and flashed his lights.  I

cp/D1213

_____                    _____
Detective Signature                        Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts,
values and/or descriptions given by me in this statement are the whole
truth to the best of my knowledge and belief.

                              Page 1 of 5

signaled to get over to see what the problem was and he parked once he saw me signal. How far, I'm not sure the distance, but he parked, I pulled over, once I got to a clear driveway and he got out of the car and ran to the truck and he said I just want to tell you all, I love you all and when you come back stop back by Tammy's house, he said I'll be there whether she's there or not, I said, okay and I said what happened to your car and he said oh, I'll tell you about it later and I said okay. I said let me run on down here so I can come on back, so _____ don't forget to stop back by. So I came back from Greenville and I didn't see the car and then something kept saying, you know go on over there, so I went over there and I blowed and he came out and he hugged me and I said what have you done and he said oh, I ain't did noting, I just wanted to let ya'll know I love you. I said boy what you done did and he said nothing I'll, I'll tell you about it later, so I blowed the horn for Tammy to come out and I had a card to give her. She came out, he went in, he went in and she came out and I gave her the card and she went back in and he came out and he got inside the truck, sat down with Tammy's baby, eating cookies or whatever and I said what have you done, he said nothing, I ain't did nothing he said tell _____ I'll be down there to see him, I said okay. He said in the truck for a minute, just playing with the baby and I said alright, let me gone home, so I can lay back down before I got to work. Then I left, then I got home, it was all over the news.

Q:    When he pulled over the ~~I NEVER cut the car off~~ car and ran to your vehicle, did he leave it running?

A:    ~~To my knowledge it was running because~~ when he starts his car, if I'm not mistaken the lights are on and when he got back to the car, I had pulled off, but you can tell when you got to crank the car because he just jumped in and left, so I assumed it was still running.

Q:    Okay from the looks of it, did _____ look distraught?

A:    I didn't pay attention because <u>I'm so use to them, you know being together or whatever.</u> I wouldn't have never thought that she was frightened or anything or nothing like that.

Q:    To your knowledge was Belinda scared of him? *WE ARE ALWAYS Together*

A:    Not to me cause, no to me.

·D·

cp/D1213

_____

_____              _____

Detective Signature                          Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____              Page 2 of 5

Q: Not just in that day, not that day, but just...
A: I'm saying period, I didn't think she was scared of him, but I, I, I didn't think she was scared of him and maybe she was and hid it, she was. I can't say she was scared of him. So when you got to Tammy's did he come out at Tammy's?
A: Unh-unh, she didn't come out.

Q: And Tammy when she came out to you, she was out there by herself with you?
A: Uh-huh and he was in side.

Q: Okay, so Tammy didn't say noting to you about what's going on.
A: She said Junior got that girl in there. I said Belinda, I said I saw he Unh-unh, I'll guess he just sat it there long enough, for whatever, to get whatever I was gonna him because he came right back up and when he came out, Tammy went back in.

*Still communicating*

Q: Did you know they were divorced?
A: I remember him saying something about it, but I didn't believe him you know because they were <u>still communicating and being together or whatever, so I didn't know they were divorced, no.</u>

Q: How do you know that they've been communicating?
A: She would call him, he would call her. I had my husband a birthday party in August and she came down, they came there together and the girl up the street from me, had a party, they were there together.

Q: Do you remember when that party was?
A: It was in September and I can remember him saying, they had gone out to Shoney's in Greenville for breakfast a couple of times, but she, she normal would go up to my grandmother's house, I haven't seen her up there, since like October, I guess, but I know that they were communicating because he would be at the house and she would call and come by there. And you can tell that he's on the phone with her because he's always talking about the kids, what Najil doing or what _____ what is you son doing or something like that.

*We were still Together*

Q: Do you know the history between her and he and his brother?
A: I heard, I don't know.

*Tameka Axel house*

cp/D1213

_____

_____
Detective Signature

_____
Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

Page 3 of 5

Q:    D_____ Najit was in the car Monday?
A:    I didn't see him, but I, when I got down there, I saw, I think they were just getting the car because they had the car seat.

Q:    Uh-huh.
A:    Yeah.  I heard it, I didn't hear it on the news because we came back down once  the police left my house.  They stopped by the house and asked me if I knew where he was and I said yeah, his mom just called me and told  me what was going on and I said yeah, and he asked me could I give him directions.  I said I cant give you exact directions, it'll be best if I took you and by that time my sister had called me, Tamara was on the phone and said the police was there, so I don't know, I didn't see _____I  just  seen  the  car  seat  when _____in the car.

Q:    Do you know who called the police from there?
A:    No.

Q:    Do you think it could have been Tammy?
A:    Unh-unh, I'm not, I  don't know.  I mean to my knowledge if there was anybody in the house, but Tammy and her and the baby I guess, so.

Q:    Does Tammy have kids?                    / Tammie three Kids WAS Three
A:    She have kids.  Were they there?                                    .

Q:    Uh-huh.  What did _____look like when he ran up to your truck the very first time?
A:    He didn't look like he had done anything.  He didn't look like he was just being himself.

Q:    And you seen them together since July, you said in August...
A:    Uh-huh.                          on the new She said it was two years
                                       / Since She had something to do with me
Q:    ...at your husband's party.
A:    They was at my house, matter of fact, it was August the 19th, because I had the party August the 19th it was a Saturday.

Q:    And you said your neighbor had a party in September?
A:    The girl up the street had one in September and they were there together.

cp/D1213

_____

_____                    _____
Detective Signature
                                           Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____
                                   Page 4 of 5

Q:    Have you seen then any other time?
A:    Not that I can remember.  I just remember him saying that they had gone to Shoney's, you know to breakfast or whatever, but not that I can remember.

Q:    Where do you and your husband, oh, where East Village Circle, _____?
A:    Uh-huh.

Q:    That's your mother's house?
A:    Unh-unh, that's my house.

Q:    Where's you, does your mom live on Village Circle?
A:    Unh-unh, she, she was, her house burned, she moved up the street.

Q:    But Ernest has an address of 235 Village Circle?
A:    That's his mom's, that had to be her sister.

Q:    Sorry.
A:    I didn't know her sister.

Q:    I thought for a second you and her were sister?
A:    No.

Q:    Anything else you want to tell me?
A:    No.

Q:    Everything you told me the truth?
A:    Yeah.

Ending time 0925 Hours.

*[handwritten, partially illegible:]* INTERVIEW LASTED 13 MINUTES, AGAIN IT LEAVES ME ...

cp/D1213

_____

_____          _____
Detective Signature               Witness Signature

Signature of Person Giving Statement:  I hereby affirm that the facts, values and/or descriptions given by me in this statement are the whole truth to the best of my knowledge and belief.

_____          Page 5 of 5

| State of Alabama Unified Judicial System | ● **COMPLAINT** ● | Warrant Number 2007F00237 |
|---|---|---|
| Form CR-6       Rev. 8/98 | (Felonies, Misdemeanors, or Violations - District or Municipal Court) | Case Number |

**IN THE** _____ **DISTRICT** _____ **COURT OF** _____ **MONTGOMERY** _____ **, ALABAMA**
(Circuit, District, or Municipal)                    (Name of Municipality or County)

☒ STATE OF ALABAMA

☐ MUNICIPALITY OF MONTGOMERY v.    ERNEST LEE WALKER (001027104A)
                                          Defendant (NWS Jacket Number)

*[handwritten: my name is spelled with and (A) Missing]*
*[handwritten: my name is spelled with and (A)]*

Before me, the undersigned authority, personally appeared this day the undersigned complainant who, upon first being duly sworn, states on oath that he/she has probable cause for believing, and does believe that **ERNEST LEE WALKER**, Defendant, whose name is otherwise unknown to the complainant, did, prior to the commencement of this action, on or about 02/05/2007    (date of occurrence) commit the offense of **KIDNAPPING, FIRST DEGREE** within the

☒ County of    **MONTGOMERY**

☐ City/Town of _____ or in the police jurisdiction thereof, in that he/she did: (State specific facts here. Continue on a separate sheet of paper if needed.)

abduct another person, to wit:  NIGEL WALKER AGE 3  _____ , with the intent to: (select one or more as appropriate):

*[handwritten: She said That NIGEL HIT His Head So Why Didn't it Now show in this Report as a injury]*

(1) ☐ Hold him/her for ransom or reward; or

(2) ☐ Use him/her as a shield or a hostage; or

(3) ☒ Accomplish or aid the commission of    Kidnapping 1st and aggravated stalking of Belinda Walker    , a felony, or flight therefrom; or

(4) ☐ Inflict physical injury upon him/her, or to violate or violate or abuse him/her sexually; or

(5) ☐ Terrorize him/her, or another person, to wit: _____ ; or

(6) ☐ Interfere with the performance of a governmental or political function.

*[handwritten: ONE CHARGE OF Kidnapping and Aggravated Stalking]*

*[handwritten: BELINDA STATED THAT I INTIMADATED AND THEATEN HER]*

*[handwritten: BELINDA STATED I HIT HER IN THE FACE and she or HER HEAD HIT the window So why it didn't show above]*

in violation of

☒ Section    13A-6-43    , Alabama Code 1975.

☐ Municipal Ordinance Number _____ which embraces Section _____ Alabama Code 1975, previously adopted, effective and in force at the time the offense was committed.

☐ Other _____

Sworn to and Subscribed before me this

5th _____ day of    *Cpl. E.B. White 353* Complainant    -CPL. E. B. WHITE #353

FEBRUARY _____ , 2007    MPD 320 N. RIPLEY ST.,  MONTGOMERY, AL  36104
                                    Address

*F. William Jr.* Judge/Magistrate/Warrant Clerk    _____ Telephone Number

*[handwritten vertical left margin: (NO ELEMENTS To Prove Kidnapping WAS Checked)]*

*[stamp: FILED DISTRICT COURT MONTGOMERY COUNTY 2007 FEB 6 AM 8 15]*

| **WITNESSES** | | |
|---|---|---|
| Name | Address | Telephone Number |
| | | |
| | | |
| | | |
| | | |

Additional Witnesses on Reverse Side

LOWNDES COUNTY JAIL (B-DORM)
P.O. BOX 157
HAYNEVILLE, ALABAMA 36040



MONTGOMERY, AL 361

OFFICE OF THE CLERK
CLERK, UNITED STATES DISTRICT COURT
P.O. BOX 711
MONTGOMERY, ALABAMA 36101

THIS MAIL IS FROM
THE LOWNDES CO. JAIL

CASE NO.2:07-CV-00947-MEF-WC

RECEIVED

2007 NOV -7 A 9:47

Clerk, United States District Court,

DEBRA P. HACKETT, CL.
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Comes now the Defendant, Earnest Lee Walter Jr.
(pro-Se) have mailed the United States District court more
evidence to prove that his Attorney - Gary S. Stephens had the
needed information to prove that the plantiff is not creditable
witness. and to show that the plantiff made a report on
Jan. 24, 2007, that the Defendant had treaten her around are about
Jan. 1, 2007, but the Records will show that on Jan. 14, 2007
the Defendant and his mother Rosie carter was allowed to
Keep the Defendant Kids. on Jan. 29, 2007 the Defendant and his
Ex-wife went to a movie, had sex, and went to lunch. This
is why the charge of aggavated Stalking was Dismissed, Because
it was proved the plantiff and the Defendant had a on going
relationship. all of this information was turn over to the then
Attorney which he withheld from the court. The Defendant kept
records of each time he and the plantiff meet on talked on
the phone. there are pictures enclosed as well to show that the
plantiff have been lying. all other information is being withheld
from the Defendant. See statement of plantiff in trial on october 25, 2007
She stated the Defendant had a hammer. This was not stated in any
of the police Reports. See court transcript / Judg-Reese court Room].
I have also enclosed other copies. also the Defendant will like to

remain the United States District Court that the plantiff in 2006 filed Rape charges and assault on terry knight he was found not guilty in Judge-Reese court Room.

Earnest Lee walker jr ( pro-se)

EARNEST LEE WALKER JR

Case No: DR-05-348

Circuit Judge: Anita L. Kelly

I, Earnest Lee Walker Jr hereby appeal the order of the court that case number: DR-05-348 be Dissolved. I was out of town when this matter came before this court, also on the ground that mrs. Walker and I will be having a baby in about 5 1/2 months. I would also like for the court to remove the restraining order so that I could be a father to my kids and a husband to my wife. at 1 no point and time. mrs Walker and our kids were in danger. mrs. Walker allowed me to move back into the home. mrs. Walker and I was told since she let me move back home. The restraining order whaten worth the it was wrote on. This is not in anyway disrespect to the courts. again I am appealing the court order to Dissolved the marriage Between mrs. Walker and myself.

pro-se

Earnest Lee Walker Jr
8-4-06

FILED

AUG 14 2006

Fran Gyemanck
Deputy Register

25.

This leTTeR will give you and Ideal why I AM HeRE, I TRYeD TO geT bACK beFoRE The Judge She didN'T woN'T THE Judge To no we were STill Together

Fredrick Baity    ① POSIE BAKER    ⑤ EARL CARTER
ANNIE Frazie     ② JESSIE Frazie
Terry Knight     ③ REV. OVERTON    ⑥ Kenny Flower

HERE'S THE NAMES OF MY WITNESSES. I was NOT Allowed to CALL ANY of THEM for TRIAL. HERE ARE MORE

| Form C-2 (Page 2 of 5) Rev. 2/2005 | PETITION FOR PROTECTION FROM ABUSE | Case Number DR05-348.01 |
|---|---|---|

**(Check the box if the following statement applies to you):**
   I left my home due to abuse or threat of abuse, and I am currently residing in _____ County, Alabama

The Defendant lives in Crowdens County, Al (State).

Defendant is 36 years old.

I am requesting (check one of the following boxes): ☒ a protection order; OR ☐ a change in a current protection order.

**II. To Get a Protection Order, the Defendant Must Have Done One or More of the Following**
**(Check all that apply):** → But Again we were together 29th Jan

☐ Injured me; ☒ Tried to injure me; ☒ Threatened to injure me;
☒ Made me afraid that I would be seriously injured; ☐ Made me have sex by force or threat of force; ☐ Abused a minor child; ☐ Abused a physically or mentally incapacitated person

She drove my car to work at her Grandma House

**III. Explain the Abuse That Has Happened (Begin With the Most Recent Act. You May Add Additional 8" x 11"**
**Sheets of Paper, If Necessary):** She was prenate and Didn't feel good and my paper work show different

Date and place where the abuse occurred: we went to skule in Greenville NC not HS

She Kept my car while I was working out of town ←

We took the Kids to chuck E cheese for Nigel Birthday

Describe how the Defendant hurt or threatened you and/or (a) person(s) for whom you are applying:

lift message on prone violating restrain PT over

I fear the Defendant will cause further abuse because:

He's next in lee drop my kids

we were charged before    We all went to the Farm

**IV. Legal Information Required (Check all that apply):**
We all went out to Eat with my mom, Dad & brothers At Shoneys for his Birthday
There is a current restraining or protection order against the Defendant.

Belinda Told me that Terry had put a knife around one of my children neck.

☒ YES; ☐ I don't know; ☐ NO. If YES, the County and State where it was issued: Montgomery
County, Alabama

We had ERN Orange's

The Defendant has a current restraining or protection order against me and/or the person(s) for whom I am applying:

☒ YES ☐ NO. If YES, the County and State where it was issued: Montgomery County, Al, State.

A Birthday Party at my mom's House Nov.

*(Note: If there are more current restraining or protection orders against the Defendant or against you and /or the persons(s) for whom you are applying, please attach additional 8"X11" sheets of paper, if necessary, stating the case number(s), County(ies), and State(s) in which these orders were issued).*

oct. 06

Original-Court Record     Copy-Law Enforcement     Copy-Plaintiff     Copy-Defendant

*Christopher* *Tammie Chensaw* *Lu-Lu-* *Tina Taylor* *Margie Harrison* *Brenda Phiffer* *Jackie Allen* *Keith Stovall*

| Form C-2 (Page 3 of 5) Rev. 2/2005 | PETITION FOR PROTECTION FROM ABUSE | Case Number DR05-348.01 |

## V. Child(ren)

The name(s) and age(s) of any child(ren) of the Defendant and me and/or the person(s) for whom I am applying, who are under 19 years old AND have been living in my household or the household of the person(s) for whom I am applying:

Name: Jesana Xavier Frazier _____ Age: 8
Name: Emahnau Marie Walker _____ Age: 6
Name: Nigel Christian Walker _____ Age: 3
Name: _____ Age: ___

B. Is there a custody order concerning any of the above children? ☐ YES ☒ NO

C. For the last six months, the child(ren) (has) have lived (in what State and with whom):
Child: _____ Lived with: Myself (mom) State: AL
Child: _____ Lived with: Myself (mom) State: AL
Child: _____ Lived with: Myself (mom) State: AL

## VI. Residence

**THE DEFENDANT MAY BE REQUIRED TO MOVE FROM THE PLAINTIFF'S RESIDENCE, IF THE RESIDENCE IS IN THE SOLE NAME OF THE PLAINTIFF, IF IT IS JOINTLY OWNED OR RENTED BY THE PLAINTIFF AND THE DEFENDANT, OR IF THE PARTIES ARE MARRIED TO EACH OTHER.**

Rented

The place where I (or the person(s) for whom I am applying) live is: Owned by: ☒ me; ☐ the Defendant; or ☐ both of us.

Rented by: ☐ me; ☐ the Defendant; or ☐ both of us.

**The Plaintiff must notify the court of any change(s) in address.**

## VII. Ex Parte Relief Requested (Please Check The Boxes To Show What You Want):

I am asking the court for the following for my self and/or the person(s) for whom I am applying
*(Note: The word, Plaintiff," is used in the following items to describe you and/or the persons(s) for whom you are applying):*

☒ (1) Enjoin the Defendant from threatening to commit, or committing, any further acts of abuse, as defined in the Protection from Abuse Act, against the: ☒ Plaintiff; and/or ☒ Minor(s); and/or ☒ Minor child(ren); and/or ☒ Any designated family or household member, to wit: _____

☒ (2) Further restrain and enjoin the Defendant from harassing, stalking or threatening or engaging in conduct that would place in reasonable fear of bodily injury, the: ☒ Plaintiff; and/or ☐ Minor(s); and/or ☐ Minor child(ren); and/or ☒ Any designated family or household member, to wit: _____

☒ (3) Further restrain and enjoin the Defendant from using, attempting to use, or threatening to use, physical force that would reasonably be expected to cause bodily injury to the: ☒ Plaintiff; and/or ☒ Minor(s); and/or ☐ Minor child(ren); and/or ☐ Any designated family or household member, to wit: _____

☒ (4) Further restrain and enjoin the Defendant from annoying, telephoning, contacting, or otherwise communicating, directly or indirectly, with the: ☒ Plaintiff; and/or ☐ Minor(s); and/or ☒ Minor child(ren); and/or ☐ Any designated family or household member, to wit: _____

Original-Court Record        Copy-Law Enforcement        Copy-Plaintiff        Copy-Defendant

*People I wanted Subpoena In My Case*

| Form C-2 (Page 4 of 5)<br>Rev. 2/2005 | PETITION FOR PROTECTION FROM ABUSE | Case Number<br>DR 05-348.01 |
| --- | --- | --- |

☐ (5) Order the Defendant to stay away from: The Plaintiff's ☒ residence; ☒ place of employment; ☒ school; and/or The Minor's(s) and/or Minor Child(ren)'s: ☒ residence; ☐ place of employment; ☒ school; and/or ☐ Any specified place, which the Defendant has no legitimate reason to frequent, as designated below, frequented by ☒ the Plaintiff; and/or ☒ the minor(s); and/or ☒ minor child(ren); and/or ☐ any designated family/household member. Name(s) and location(s) of the other specified place(s): ___Mylene Missionary Baptist Church___

☐ (6) Award temporary custody of the minor child(ren) to _____
(Please specify the name of the person to whom custody should be given)

☐ (7) Restrain and enjoin the Defendant from interfering with the Plaintiff's efforts to remove the Plaintiff's child(ren) from the ☒ home; and/or ☒ school, and ☒ direct the appropriate law enforcement officer to accompany the Plaintiff during the effort to remove the Plaintiff's child(re).

☐ (8) Restrain and the enjoin the Defendant from removing the minor child(ren) from _Boundourelea + Amotion_ (the individual having legal custody of the minor child(ren), except as otherwise authorized by a custody or visitation order issued by a court of competent jurisdiction).

☒ (9) Remove and exclude the Defendant from the residence of the Plaintiff, regardless of ownership of the residence.

☐ (10) Prohibit the Defendant from ☐ transferring; ☐ concealing; ☐ encumbering; or ☐ otherwise disposing of specified property mutually owned or leased by the parties (Please describe property): _____

☒ (11) Restrain and enjoin the Defendant from interfering with the Plaintiff's employment.

☒ (12) Award any other relief deemed necessary to provide for the safety and welfare of the: ☒ Plaintiff; and/or ☐ Minor(s); and/or ☒ Minor children; and/or ☐ Any designated family or household member, as follows: _____

**VIII. Additional relief requested for final hearing:**
In addition to the relief requested above in, "VII Ex Parte Relief Requested", I request the following relief for my self and/or the person(s) for whom I am applying:

☒ (13) Order the Defendant to comply with the following visitation arrangements of any minor child(ren):
☐ Visitation; ☐ Deny visitation; ☒ Require supervision by a third party-
(Please specify supervision arrangements below):

☒ (14) Order the Defendant to pay attorney's fees and court costs.

☒ (15) Grant possession of the residence or household to the Plaintiff to the exclusion of the Defendant by: ☐ evicting the Defendant; ☒ restoring possession to the Plaintiff; or ☐ both; or ☐ agreeing to allow the Defendant to provide suitable alternate housing.

☐ (16) Order the Defendant to pay temporary reasonable child support to the Plaintiff and/or any child(ren) in the P Plaintiff's custody, or both, in accordance with the Child Support Guidelines. (If this relief is sought, you must Attach COMPLETED copies of Form CS-41, Child Support Obligation Income Statement/Affidavit, FormCS-42, Child Support Guidelines, and Form CS-47, Child Support Information Sheet).

Original-Court Record        Copy-Law Enforcement        Copy-Plaintiff        Copy-Defendant

| Form C-2 (Page 5 of 5)<br>Rev. 2/2005 | PETITION FOR PROTECTION FROM ABUSE | Case Number<br>DR05-348.01 |

☐ (17) Order the Defendant to provide temporary possession of the vehicle (description): _____ _____ to the Plaintiff because the Plaintiff has no other means of transportation of his or her won and the Defendant ☐ has control of more than one vehicle; or ☐ has alternate means of transportation.

☐ (18) Incorporate another ☐ custody order (Case Number, County, State:_____); or visitation order (Case Number, County, State: _____ ; ☐ support order (Case Number, County, State: _____) into this Order.

☒ (19)  Order the Defendant to surrender all firearms.

☐ (20)  Order that the Plaintiff's address, the address of any member of the Plaintiff's family or household, or an address that would reveal the confidential location of a shelter for victims of domestic violence be omitted or deleted from all documents filed with the Court, documents made available to the public, and documents made available to the Defendant.

☒ (21) Direct the appropriate law enforcement office to accompany the Plaintiff to: ☐ the residence of the parties;  and/or ☒ another location, _____ (description of location), as necessary to enforce any of the terms of this Order.

☐ (22) Order other relief not requested above (describe): _not to be able to come in regency_ _parly area_

Before me, the undersigned authority, personally appeared the Plaintiff, who is known to me or presented an identification card to me, and who being duly sworn, deposes and says that he/she has read the foregoing Petition for Protection from Abuse and that the facts herein are true and correct.

Sworn to and subscribed before this, the ___24th___ day of ___January___, ___2007___.

x _Belinda Walker_
Plaintiff (Please print)

x _Belinda Walker_
Plaintiff (Signature)

_Beverly Evans_
Judge/Clerk of Court/Notary Public
((Notary: my commission expires_____).

_Because she knew she had Terry Knight in and out of the Home!_

_____
_____

_____
Business Address and Telephone Number of Judge/Clerk of Court/Notary Public

Original-Court Record    Copy-Law Enforcement    Copy-Plaintiff    Copy-Defendant

| State of Alabama<br>Unified Judicial System<br><br>Form C-2 (Page 1 of 5)<br>Rev. 2/2005 | **PETITION FOR PROTECTION FROM ABUSE** | Case Number<br><br>*DR 05·348.01* |

IN THE _____ COURT OF _____ COUNTY, ALABAMA

*Belinda Waller* _(Circuit or District)_ v.

Plaintiff *(your name)*

*(Name of County)*

Defendant *(person to be restrained)*
Ernest Waller
Address/ Business or Home
233 Village Cir
_____
City        State        Zip Code
Fort Deposit AL 36032
7-30-70
Date of Birth
_____
Social Security Number

**YOU MUST PROVIDE COMPLETE AND
TRUTHFUL INFORMATION. IF YOU DO NOT, THE
COURT MAY DISMISS THIS CASE, AND YOU MAY
BE SUBJECT TO BEING CHARGED WITH
PERJURY FOR KNOWINGLY PROVIDING FALSE
INFORMATION.**

*She meet me JAN. 29. 2007*
*SEE RECORDS*

2007 JAN 24 AM 11 17
DOMESTIC RELATION DIV.
MONTGOMERY COUNTY, AL.
FILED

**I. Eligible Plaintiffs (Check all that apply):**
☐ A. I am an adult seeking relief for ☒ myself; and/or ☐ my minor child(ren); and/or ☐ another person presented
by physical or mental incapacities from seeking a protection order.

**CHECK AND FILL OUT ONLY ONE SECTION (1,2,3,4, or 5):**

☐ 1. The Defendant is my ☐ spouse;    or ☒ former spouse.
     Date of marriage: 3-31-99        Date of Divorce (if applicable): 7-10-06
☒ 2. The Defendant and I are adults related by: ☐ blood; ☒ marriage; or ☐ adoption.
☒ 3. The Defendant and I have lived together.
☐ 4. The Defendant and I are currently living in the same household.
☒ 5. The Defendant and I are the unmarried parents of a child.

**I am the Plaintiff, and I state that the following is true and correct:**
I am a resident of ___Montgomery___ in ___Alabama___. My age is: __28__ years old.
                    (Name of County)              (Name of State)

Are you involved in any other civil case (including divorce or custody) with the Defendant? ☐ YES ☒ NO
If YES, please state the county and State in which the case was brought: _____ County,
                                                                           (State)

*We meet 5 days after this report was made*
*AND TEN DAYS BEFORE SEE RECORDS*

FILED
JAN 2 4 2007
by _____ Deputy Clerk

Are there any criminal charges against the Defendant because of abuse to you? ☒ YES ☐ NO
If YES, the charges were brought in ___Montgomery___ County, __AL__
                                                              (State)

*(Note: If there are more civil cases with the Defendant or more criminal charges against the Defendant, please attach
additional 8"X11" sheets of paper, if necessary, stating the case number(s), county(ies), and State(s) in which these cases are
being handled).*

29.

Original-Court Record        Copy-Law Enforcement        Copy-Plaintiff        Copy-Defendant

Jimlet Williston In. #80029
Lowndes County Jail    Dorm B
P.O.Box 157
Lowndesville, Alabama 36040

THIS MAIL IS FROM
THE LOWNDES CO. JAIL

36101+07215

MONTGOMERY AL 361

06 NOV 2007 PM 1 L

USA 41

office of the Clerk
Clerk, United States District court
P.O.Box 711
Montgomery, Alabama 36101